# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-2664

_____

Warren Unilube, Inc.,

*Petitioner,*

v.

National Labor Relations Board,

*Respondent.*

_____

No. 11-2974

_____

Warren Unilube, Inc.,

*Respondent,*

v.

National Labor Relations Board,

*Petitioner.*

_____

National Labor Relations Board

_____

Submitted: April 17, 2012
Filed: August 28, 2012

———————

Before LOKEN, COLLOTON, and SHEPHERD, Circuit Judges.

———————

COLLOTON, Circuit Judge.

Warren Unilube, Inc., petitions for review of an order of the National Labor Relations Board that directed the company to recognize and bargain with Teamsters Local 667 ("the Union"). The Board cross-applies for enforcement of its order. We deny the petition for review and enforce the Board's order.

I.

A labor organization may file a petition with the Board seeking certification as the collective bargaining representative of a group of employees. *See* 29 U.S.C. § 159(c)(1); 29 C.F.R. § 102.60(a) (2010).[1] The labor organization and employer may, with the approval of the Board's regional director, enter into an agreement setting a representation election to be conducted under the director's supervision. *See* 29 U.S.C. § 159(c)(4); 29 C.F.R. §§ 102.62(b), 102.69(a) (2010). After the election, and within seven days of the tally of ballots, a party may file objections to the conduct of the election or to conduct that allegedly affected the election results. 29 C.F.R. § 102.69(a). If the labor organization prevailed in the election, and no objections are filed, then the regional director must certify the results and issue a certification of representative. *Id.* § 102.69(b). If objections are filed, however, the regional director must prepare a report on the objections and make recommendations to the Board. *Id.*

---

[1]The Board's regulations governing representation proceedings were amended as of April 30, 2012. *See* Representation—Case Procedures, 76 Fed. Reg. 80,138, 80,141 (Dec. 22, 2011). We cite the regulations in effect at the time of the Board's action in this case.

§ 102.69(c)(2).  A party may file exceptions to the report with the Board, *see id.*, and the Board may resolve the exceptions based upon the record or after a hearing.  *Id.* § 102.69(f).

In August 2010, the Union petitioned the Board, asking to be certified as the collective bargaining representative of 135 employees at Warren Unilube's facilities in West Memphis, Arkansas.  The Union and Warren Unilube entered into a stipulated election agreement, and the Board's Regional Office scheduled a representation election for October 8, 2010.

On October 6, 2010, a local newspaper published an editorial entitled "Our View:  Union very bad idea for West Memphis."  The editorial recounted "efforts by Teamsters Local 667, Memphis, Tenn., of trying to take control of a major company right here in West Memphis."  It warned of potentially "dire consequences" of a Union victory, and stated that, "[f]rom all we know, if this union succeeds this company's management could very easily close shop and cause every worker to loose [sic] their jobs."  The editorial concluded:  "We can only hope that the employees of this West Memphis company have the common sense to send Teamsters Local 667 back across the bridge with a strong message they are not welcome on this side of the Mississippi River."

The next day, the Union filed an unfair labor practice charge with the Board's Regional Office, alleging that Warren Unilube unlawfully had threatened to close its facility if the employees voted in favor of unionization.  The Board has a longstanding "blocking charge policy," which provides that the Board generally will not process petitions for certification and hold elections while an unfair labor practice charge is pending.  *See Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.*, 293 F.3d 409, 412 (8th Cir. 2002); NLRB Casehandling Manual (Part Two) Representation Proceedings § 11730 (2007).  When an election already has been scheduled, and a charge is filed too late to permit adequate investigation before

the election, the policy provides that the Regional Director may, "in his/her discretion," (1) postpone the election pending disposition of the charge, (2) hold the election and impound the ballots until after disposition of the charge, or (3) conduct the election and issue a certification prior to an investigation. NLRB Casehandling Manual § 11731.5. Pursuant to that policy, the Board's Regional Director postponed the election and held the Union's petition in abeyance.

That same day, Warren Unilube's president, Dale Wells, issued a memorandum to Warren Unilube employees. Wells discussed the editorial, including the prospect of a plant closure, and advised employees to disregard all rumors. He informed employees that Warren Unilube had "no intent to close this plant no matter the outcome of this election."

On October 20, 2010, the Union filed a request to proceed with its petition for certification, and the associated election, notwithstanding the pending charge. The Union and Warren Unilube entered into a second stipulated election agreement that set the election for November 5. The Board approved the agreement, and the election was held on November 5. The employees voted 69-56 in favor of union representation.

A week after the election, Warren Unilube filed objections to conduct that allegedly affected the election results. The company alleged that the Union had filed a "baseless" unfair labor practice charge that caused a delay in the election scheduled for October 8. Warren Unilube denied any responsibility for the editorial and argued that the Union had no basis to believe otherwise. The company argued that because the Union had no basis for the charge, and because Warren Unilube immediately published a disclaimer to its employees, the election should have been held as scheduled. Warren Unilube also urged that the Board's delay of the election caused "anger and dismay" among employees and unfairly suggested that Warren Unilube had unlawfully threatened to close the plant. The actions of the Union and the Board,

Warren Unilube argued, destroyed the conditions necessary for a valid election. In support of its claim, Warren Unilube submitted declarations of three supervisors and three hourly employees. These employees stated their belief that the delay in the election impacted the results in the Union's favor.

The Regional Director issued a report recommending that the Board overrule Warren Unilube's objections and certify the Union. The Regional Director noted that the allegations in the unfair labor practice charge were serious, and determined that there was "no basis to conclude that the charge was frivolous or baseless." Because the timing of the editorial left the parties little time to investigate the matter, the Director concluded that the Region properly exercised its discretion to postpone the election pending an investigation. In sum, the Director determined that Warren Unilube's evidence of alleged misconduct was "insufficient on its face to warrant setting aside the election."

Warren Unilube filed exceptions to the Director's report. The company urged the Board to set aside the election or order a hearing on the objections. The Board adopted the Regional Director's recommendations without a hearing and certified the Union as the employees' bargaining representative. One Board Member thought it would have been "preferable" to hold the election as scheduled and impound the ballots pending an investigation, but nonetheless agreed that the Regional Director did not abuse his discretion in postponing the election.

Following the Union's certification, Warren Unilube declined the Union's request to negotiate a collective bargaining agreement. The Union filed an unfair labor practice charge, and the Board's General Counsel issued a complaint alleging that Warren Unilube's refusal to recognize and bargain with the Union violated the National Labor Relations Act, 29 U.S.C. §§ 151-69. *See id.* § 160(b). In response, Warren Unilube reasserted its objections to the election, disputed the validity of the Union's certification, and argued that it had no obligation to bargain with the Union.

The Board granted the General Counsel's motion for summary judgment. The Board declined to reexamine its certification decision and held that Warren Unilube's refusal to bargain violated 29 U.S.C. § 158(a)(1) and (5). The Board ordered the company to recognize and bargain with the Union as the employees' collective bargaining representative. *See id.* § 160(c). Warren Unilube petitions for review of the Board's order, and the Board cross-applies for enforcement of its order. *See id.* § 160(e)-(f).

II.

The Board's certification decisions are not final orders subject to direct judicial review. *See Boire v. Greyhound Corp.*, 376 U.S. 473, 476-77 (1964). An employer, however, may obtain review of the Board's certification decision if a dispute over the correctness of that decision "eventuates in a finding by the Board that an unfair labor practice has been committed." *Id.* at 477. Thus, an employer may obtain judicial review of the Board's certification decision by refusing to bargain and defending the ensuing unfair labor practice charge on the ground that the election was flawed. *Id.*; *see NLRB v. Superior of Mo., Inc.*, 233 F.3d 547, 550 (8th Cir. 2000). Because the Board's finding of an unfair labor practice is based on findings made in the certification proceeding, the record of that proceeding is properly before the court. *See* 29 U.S.C. § 159(d); *Boire*, 376 U.S. at 477.

Warren Unilube followed that approach here. The company argues that it had no duty to bargain with the Union, because the Union was not a properly certified representative of the employees. Warren Unilube contends that the election results should be set aside on the ground that misconduct by the Union and abuse of discretion by the Regional Director interfered with employees' exercise of free choice and materially affected the election results. Alternatively, Warren Unilube argues that the matter should be remanded to the Board for an evidentiary hearing.

Warren Unilube argues that two related events interfered with the employees' exercise of free choice and materially affected the election results. The company asserts that the Union filed a baseless charge for the sole purpose of delaying the election, and that the Regional Director's decision to postpone the election exacerbated the impact of the Union's conduct. If we are not convinced by these points, then Warren Unilube argues that it is at least entitled to an evidentiary hearing before the Board on its objections to the election.

"Representation elections are not to be set aside lightly." *Millard Processing Servs., Inc. v. NLRB*, 2 F.3d 258, 261 (8th Cir. 1993). As the party challenging the election, Warren Unilube must "show by specific evidence not only that improprieties occurred, but also that they interfered with employees' exercise of free choice to such an extent that they materially affected the election results." *Beaird-Poulan Div. v. NLRB*, 649 F.2d 589, 592 (8th Cir. 1981).

The parties suggest that we should review the Board's decision whether to set aside an election for an abuse of discretion. It is true that the Board has "a wide degree of discretion *in establishing the procedure and safeguards* necessary to insure the free and fair choice of bargaining representatives by employees." *NLRB v. A.J. Tower Co.*, 329 U.S. 324, 330 (1946) (emphasis added). The National Labor Relations Act, however, provides that on a petition for review or enforcement of a Board order, the Board's factual findings are conclusive "if supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e)-(f). Whether "improprieties occurred" in the conduct of the election, *Beaird-Poulan Div.*, 649 F.2d at 592, and whether any such improprieties "interfered with employees' exercise of free choice to such an extent that the materially affected the election results," *id.*, are factual findings that we review under the substantial evidence standard. *See Arlington Hotel Co. v. NLRB*, 712 F.2d 333, 337 (8th Cir. 1983); *LaCrescent Constant Care Ctr., Inc. v. NLRB*, 510 F.2d 1319, 1322 & n.17 (8th Cir. 1975); *Hickman Harbor Serv. v. NLRB*, 739 F.2d 214, 218 (6th Cir. 1984); *Jamesway Corp.*

*v. NLRB*, 676 F.2d 63, 67 (3d Cir. 1982).[2] The Board's decision on these matters should be upheld if it is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (quotation omitted); *see Wilkinson Mfg. Co. v. NLRB*, 456 F.2d 298, 302 (8th Cir. 1972) ("[O]ur power of judicial review in this area is limited to ascertaining the reasonableness of the Board's decision.") (citing *NLRB v. Golden Age Beverage Co.*, 415 F.2d 26, 29 (5th Cir. 1969)).

Warren Unilube complains that the Union filed a frivolous or baseless charge in order to delay a scheduled election. The Board's blocking charge policy is not to be misused by a party as a tactic for delay. *See* NLRB Casehandling Manual § 11730. If the company's factual allegation were correct, then it could seek to invoke the rule that "[w]hen misconduct is directly attributable to the union, the Board will overturn the election when the conduct reasonably tend[ed] to interfere with the employees' free and uncoerced choice in the election." *Millard Processing*, 2 F.3d at 261 (internal quotation omitted). The Board, however, found "no basis to conclude that the [Union's] charge was frivolous or baseless in these circumstances." As a result, the Board determined that the Regional Director properly invoked the blocking charge policy and postponed the election pending an investigation.

We conclude that there is substantial evidence to support the Board's determination that the charge was not baseless or frivolous. A threat to close a plant is "one of the most potent instruments of employer interference" with employees'

[2]In *Wright Memorial Hospital v. NLRB*, 771 F.2d 400 (8th Cir. 1985), this court did say that the issue on appeal was whether "the Board abused its discretion" in overruling an employer's objections to an election and certifying a union. *Id.* at 403. In its analysis of the employer's appeal, however, the court concluded that the Board "could reasonably infer from the facts" that employees were not coerced into voting for the union. *Id*. at 406. In substance, therefore, the court applied the substantial evidence standard.

right to organize. *Chemvet Labs., Inc. v. NLRB*, 497 F.2d 445, 448 (8th Cir. 1974). The October 6 editorial specifically tied the prospect of a plant closure to the Union's success in the upcoming representation election. The authors stated that they had "learned just recently" of unionization efforts at a local company, that they were "told" the Union would soon "try to take control," and warned that, "[f]rom all we know," a Union victory could cause management to "close shop and cause every worker to loose [sic] their jobs."

The editorial did not attribute this information to any source. But given the editorial's content and the impending election, it was not unreasonable for the Board to accept the Union's assertion that it acted in good faith when it filed the charge against Warren Unilube. The company, after all, had motive and opportunity, and anonymous sources in the media are notoriously difficult to trace. As the Regional Director noted, the editorial's appearance two days before the scheduled election left the parties little time to investigate, and the extent to which the Union substantiated its allegation must be viewed in this context. Warren Unilube's own evidence, moreover, tends to support the Board's determination that the charge was not baseless. According to one employee, workers "were talking about [the editorial] the next day, all day long," and they all "seemed to believe that the company was behind the editorial being published." Some continued to hold this belief even after Wells issued a memorandum advising employees to disregard rumors. This evidence suggests that the Union's concern was not baseless.

We disagree with Warren Unilube's suggestion that the Union's later request to proceed with the election demonstrates that the allegation was baseless when filed. Upon request from the charging party, the Regional Director may proceed with a petition notwithstanding a pending charge. *See* NLRB Casehandling Manual § 11731.1(a). The Union made such a request on October 20, 2010. The rescheduled election then took place on November 5, nearly a month after the editorial appeared, pursuant to a stipulation of the parties. That the Union agreed to proceed with the

election in November, however, does not show that the Union's allegation was a baseless delay tactic. Even where a union believes that an employer has engaged in unfair conduct, the union rationally may conclude that a fair election is possible after the passage of time diminishes the impact of the alleged unfair labor practice. It was not unreasonable for the Board to accept that the Union followed that course here.

We also are not convinced that the Board's eventual dismissal of the unfair labor practice charge shows that the Union filed a baseless charge as a delay tactic. The Regional Director found on December 30, 2010, that there was insufficient evidence of a violation by Warren Unilube. But this determination, made after an investigation, does not show that the Union had no basis to file a charge on the eve of the election. Given the timing of the editorial, the inflammatory content, and the lack of identified sources for the information, we cannot say that the Board's finding was unsupported by substantial evidence.

Warren Unilube also argues that the election should be set aside because the Regional Director's postponement of the election violated Board policy and gave credence to the Union's charge. As a consequence, the company contends, there was not a free and fair election, and the results were skewed in favor of the Union.

Under the Board's blocking charge policy, an election may be suspended pending resolution of unfair labor claims. *See Hope Elec.*, 293 F.3d at 412; NLRB Casehandling Manual § 11730. The Board's Manual deals specifically with charges filed too late to permit adequate investigation before a scheduled election. *See* NLRB Casehandling Manual § 11731.5. In these circumstances, the Regional Director has discretion to postpone the election, to hold the election and impound the ballots, or to conduct the election and issue a certification prior to an investigation. *Id.* In exercising this discretion, the Regional Director is to consider whether the charging party submitted "substantial evidence" in support of its allegations. *Id.*

-10-

Warren Unilube maintains that the Union's "bare-bones, vague and general charge" was not supported by substantial evidence, and that the Regional Director thus should not have postponed the election. Inferences drawn from circumstantial evidence about likely sources of a newspaper editorial may not be "substantial evidence," but this does not mean that an investigation aimed at identifying anonymous sources is never warranted. "Substantial evidence" is not a prerequisite to postponement of an election under the Board's policy; it is merely "among the factors to be considered" in acting on a charge filed shortly before an election. NLRB Casehandling Manual § 11731.5. Other factors include the passage of time between the alleged conduct and the filing of the charge and the seriousness of the allegations, both of which supported the Regional Director's action in this case. Allowing the election to proceed while impounding the ballots pending investigation was another option, but the Board reasonably upheld the Regional Director's decision. There was substantial evidence to support the Board's conclusion that the Regional Director had sufficient basis to postpone the election, and that the postponement did not interfere with a free and fair election.

For similar reasons, we conclude that the Board properly denied the company's objections without a hearing. In considering objections, the Regional Director may act on the basis of an investigation or upon the record of a hearing. *See* 29 C.F.R. § 102.69(d). To warrant a hearing, the objecting party must make a "prima facie showing of substantial and material facts which, if true, warrant setting aside the election." *Rosewood Care Ctr. of Joliet, Inc. v. NLRB*, 83 F.3d 1028, 1031 (8th Cir. 1996). We review *de novo* the Board's decision not to hold a hearing. *Superior of Mo.*, 233 F.3d at 550.

Warren Unilube relies on our decision in *Superior of Missouri*, where an employer claimed that a Board agent's failure to attend a scheduled election and the subsequent rescheduling impacted the election results. *Id.* at 552. The agent's blunder in that case had "seriously disrupted the laboratory conditions, and a rumor

spread that [the employer] had corrupted the Board's neutrality." *Id.* The Regional Director then unilaterally rescheduled the election, and neither the Board agent nor the union explained the situation to employees. *Id.* This court held that these facts, coupled with employee affidavits stating that a number of employees changed their vote because of the incident, warranted a hearing on "whether the Board agent's blunder destroyed the election's neutral conditions by prejudicing voters against the employer." *Id.* This was so, the court explained, because the employer "made a prima facie showing of objectionable conduct that may have affected the outcome of the election," and a hearing was needed to resolve factual issues. *Id.*

Unlike the objecting party in *Superior of Missouri*, Warren Unilube did not make "a prima facie showing of objectionable conduct" that required an evidentiary hearing. *Id.* The Board postponed the election pursuant to its well-established blocking charge policy, not because of a "blunder" by an agent of the Board or a comparable flaw in the process. Warren Unilube has not presented substantial and material facts that the Union's charge was a baseless delay tactic that affected the outcome of the election. The company itself agreed to conduct the election on November 5, rather than to postpone it further until the Union's charge had been fully investigated and resolved. In these circumstances, we conclude that Warren Unilube failed to make a sufficient showing to necessitate an evidentiary hearing.

\*     \*     \*

For the foregoing reasons, we deny the petition for review and enforce the Board's order.

_____